Kolin Tang, CSB #279834
Email: ktang@millershah.com
James C. Shah, CSB #260435
Email: jshah@millershah.com
MILLER SHAH LLP
19712 MacArthur Blvd., Suite 222
Irvine, California 92612
Telephone: 866-540-5505
Facsimile: 866-300-7367

*Attorneys for Plaintiff and the Class*

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARS F. BRAUER, on behalf of himself and all others similarly situated, | Case No. |
| | **COMPLAINT** |
| Plaintiff, | |
| | <u>CLASS ACTION</u> |
| v. | |
| | JURY TRIAL DEMAND |
| EXAMONE WORLD WIDE INC. and QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., | |
| Defendants. | |

## I.   PRELIMINARY STATEMENT

1.      Plaintiff Lars F. Brauer brings this action on his own behalf and on behalf of all other persons similarly situated against Defendants ExamOne World Wide Inc. ("ExamOne") and Quest Diagnostics Clinical Laboratories, Inc. ("Quest

**COMPLAINT - 1**

1   Diagnostics" and together with ExamOne "Defendants") based upon Defendants'

2   widespread violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

3   ("FCRA"). Defendants violate the important protections in the FCRA by failing to

4   follow reasonable procedures to assure the maximum possible accuracy of the

5   consumer reports they prepare and disseminate in connection with consumers'

6   applications for insurance. Specifically, Defendants regularly include on such

7   reports prescription and other medical history that does not pertain to the

8   individual who is the subject of the report. Defendants furthermore systemically

9   fail to clearly and accurately identify to consumers the source(s) of the

10  information that they place on their consumer reports. Defendants thus deprive

11  consumers of valuable congressionally-mandated information and make it more

12  difficult for consumers such as Plaintiff to correct errors that are caused by private

13  vendor sources, rather than the pharmacies and/or medical providers that

14  Defendants misidentify as their sources. Defendants' conduct deprives consumers

15  of their rights under federal law and results in widespread harm.

## II.   JURISDICTION AND VENUE

17          2.      This Court has jurisdiction over this matter under 15 U.S.C. § 1681p

18  and 28 U.S.C. § 1331 because this case raises a federal question under the federal

19  Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

20          3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)

21  because Plaintiff resides in this district, a substantial part of the events or

22  omissions giving rise to the claim occurred in this district, and Defendants do

23  business in this district.

24

**COMPLAINT - 2**

1

### III.   PARTIES

2      4.      Plaintiff Lars F. Brauer is an adult individual who resides in Los

3  Angeles, California.

4      5.      Defendant ExamOne World Wide Inc. is a Pennsylvania company

5  that has principal places of business at 500 Plaza Dr, Secaucus, New Jersey,

6  07094 and Lenexa, Kansas, and which regularly conducts business in the State of

7  California.

8      6.      Defendant Quest Diagnostics Clinical Laboratories Inc. is a Delaware

9  company headquartered in Secaucus, New Jersey.

10

### IV.   FACTUAL ALLEGATIONS

11  **A.   Through ExamOne, Defendants sells "ScriptCheck" reports regarding**

12  **consumers' prescription history.**

13      7.      Acting in concert, Defendants are specialty consumer reporting

14  agencies ("CRA") in the business of gathering and selling reports about

15  consumers which contain information about their medical histories, including

16  detailed histories of medications prescribed by doctors, onto "ScriptCheck"

17  reports.

18      8.      Defendants' ScriptCheck reports are highly detailed; prescription

19  histories include drug name, dosage, fill date, pharmacy, and physician

20  information.

21      9.      ScriptCheck reports furthermore purport to identify whether the

22  individual who is the subject of the report in fact took the medications as

23  prescribed, e.g. "drug compliance."

24

**COMPLAINT - 3**

10.    Defendants prepare ScriptCheck reports by gathering information from "some of the largest pharmacy benefits management (PBM) companies in the country" in order to provide what they call a more "comprehensive review of your applicant's prescription drug history."[1]

11.    In addition to obtaining prescription history information from third party "PBM" companies, Defendants also obtain information from other data contributors, such as Medical Information Bureau ("MIB").

12.    In addition to compiling this prescription history data from their sources into a single report, Defendants also interpret the data, summarize and assemble it, and provide color-codes and shapes/icons on the report, which categorize the prescription records into several categories (red, yellow or green, and/or circles and triangles) associated with health conditions.[2]

13.    In addition to categorizing the prescriptions, Defendants provide risk/probability indicators and scores for both medications and medical conditions which they create, communicating that an individual is a higher risk for insurance purposes if they see a particular provider.

14.    Defendants prepare and sell these reports for a fee to insurance companies in connection with an application for life insurance.

---

[1] https://www.examone.com/reducing-cycle-time/scriptcheck/ (last visited October 18, 2022).
[2] https://blog.examone.com/blog/2019/06/27/understanding-prescription-history-report/ (last visited October 18, 2022).

**COMPLAINT - 4**

15.     Defendants are regulated by the FCRA, and the reports they sell are consumer reports which they intend to be used to determine consumers' eligibility for insurance.

16.     Defendants compile reports and respond to consumer inquiries using standardized policies and procedures, and do not "reinvent the wheel" with respect to each individual report or communication.

**B.     Defendants fail to accurately report consumer information.**

17.     Defendants represent that their ScriptCheck reports provide "the most complete and accurate picture of your applicant's prescription claims history."[3]

18.     But Defendants regularly fail to ensure the most basic test of accuracy: that the medications listed on its reports were in fact prescribed to the applicant.

19.     Defendants sell inaccurate ScriptCheck reports as a result of their failure to follow reasonable procedures to assure the maximum possible accuracy regarding the information they sell about consumers. *See* 15 U.S.C. § 1681e(b).

20.     One of the most well-known and prevalent inaccuracies that occur in the consumer reporting industry is a "mixed file."

21.     A mixed file is a consumer report in which some or all of the information in the report pertains to an individual who is not the subject of the report.

22.     Defendants employ policies and procedures that frequently allow

---

[3] https://www.examone.com/reducing-cycle-time/scriptcheck/ (last visited October 18, 2022).

1   information belonging to one consumer to appear in the consumer file of another.

2       23.     Defendants employ procedures in order to maximize the number of

3   reports which contain information, accurate or not.

4       24.     Defendants' reporting of inaccurate information is not accidental, nor

5   a result of simple negligence, but instead a result of deliberately designed policies

6   and procedures.

7   **C.    Defendants fail to disclose the true source(s) of their prescription
        information.**

8

9       25.     Defendants compound the harm caused by their inaccurate reporting

10  by concealing the identities of the third-party sources from which they obtain

11  prescription records, impairing consumers' ability to correct inaccuracies and

12  prevent further inaccurate reporting of such records.

13      26.     Defendants purport to comply with the disclosure requirement of

14  FCRA section 1681g(a), by providing consumers with information in their file in

15  response to requests by consumers.

16      27.     However, in their disclosures of information to consumers,

17  Defendants fail to identify the source(s) from which they obtain information,

18  including pharmacy benefit managers and other "data contributors."

19      28.     Thus, consumers have no way of knowing whether a particular item

20  of information was retrieved directly from a pharmacy, from a pharmacy benefit

21  manager, from a "data contributor" or even from another consumer reporting

22  agency (CRA), and thus consumers cannot determine the true origin of the data

23  Defendants sell about them, and dispute any inaccuracies directly with the

24

**COMPLAINT - 6**

1  source(s) of it.

2      29.    The addition of a pharmacy benefit manager, other CRA and/or

3  vendor into the chain of information introduces another opportunity for errors,

4  including in personal identifying information which can cause information to be

5  placed in the wrong consumer's file.

6      30.    The fact that information was obtained from a pharmacy benefit

7  manager is essential for a consumer to properly address any inaccurate reporting,

8  so that a consumer can determine whether an error originated with the pharmacy

9  or with a third party, and ensure that any pharmacy benefit manager or other

10  vendor does not further spread the error.

11     31.    The FCRA unambiguously requires CRAs such as Defendants, upon

12  request, to "clearly and accurately disclose to the consumer," among other things,

13  "the sources" that supplied any "information" to the CRA about that consumer. 15

14  U.S.C. § 1681g(a)(2).

15     32.    Disclosure of the true source from which a CRA obtained

16  information is vital so that consumers always know who is furnishing important

17  information about them, and which can allow them to prevent errors that

18  originated with the source from spreading to other CRAs and being misreported in

19  the future.

20     33.    Nevertheless, and despite the clear mandate of FCRA § 1681g(a)(2),

21  Defendants fail to disclose to consumers the pharmacy benefit managers and other

22  sources of information that it collects and reports about them.

23

24
                                    **COMPLAINT - 7**

1    **D.     Plaintiff Brauer's experience.**

2        34.     Plaintiff is a consumer about whom Defendants sold inaccurate

3    prescription and medical history information, to whom Defendants failed to

4    disclose information as required by the FCRA.

5        35.     In or around early December 2021, Plaintiff applied for life insurance

6    with Sproutt Aktibo, Inc. ("Sproutt").

7        36.     In connection with Mr. Brauer's application, Sproutt requested a

8    consumer report from Defendants about Plaintiff, including his prescription

9    history. Sproutt provided Defendants with Plaintiff's first and last name, social

10   security number, and full date of birth.

11       37.     On or about December 7, 2021, Defendants prepared a report about

12   Plaintiff, including prescription history, prescriber information, drug compliance

13   data, and associated risk indicators, and sold it to Sproutt for a fee.

14       38.     Upon information and belief, Defendants obtained information that

15   they placed on the report from one or more pharmacy benefit managers and other

16   "data contributors."

17       39.     The December 7, 2021 report was grossly inaccurate.

18       40.     The prescription history was inaccurate because it included seven (7)

19   different medications that Plaintiff has never been prescribed or taken.

20       41.     Several of the medications listed on the report as prescribed in 2020

21   and 2021 were identified as for "pediatric" or "child" use, a clear indication that

22   they did not pertain to Plaintiff, who was forty-two (42) years old in 2020.

23       42.     The report furthermore inaccurately identified prescribing physicians

24
                                  **COMPLAINT - 8**

who had never treated Plaintiff, including a "pediatric specialist" listed with a medium risk indicator, and a "home health" provider with a high risk indicator.

43.    Of the seven (7) medications inaccurately attributed to Plaintiff, Defendants categorized two as medium risk, and three as high risk.

44.    The seven inaccurate medications had been prescribed not to Plaintiff, but to his young son, who was fifteen (15) months old in December 2021 when Defendants prepared the report.

45.    In addition, the December 7, 2021 report included a medical prescriber of Armaghan Azad, who had never prescribed any medication to Plaintiff and gave him a risk score of "10".

46.    In contrast to the inaccurate records, all of the prescription history contained on Defendants' report that in fact pertained to Plaintiff was categorized as low risk.

47.    On or about December 10, 2021, Sproutt denied Plaintiff's application for life insurance on the basis of the inaccurate ExamOne report.

48.    When Plaintiff learned he had been denied because of the ExamOne report, he was shocked and concerned. Plaintiff immediately contacted ExamOne and requested a copy of his file.

49.    On or about December 10, 2021, Defendants provided a response to Plaintiff's request, which consisted of a letter and a copy of the report provided to Sproutt.

50.    Defendants stated in the December 10, 2021 letter that the records on the report came from "databases of pharmacy benefit managers and other data

1   contributors" but did not specifically identify any PBM or other data contributor.

2   51.   The copy of the report itself did not identify the source(s) from which

3   Defendants obtained any of the information included on the report.

4   52.   Notwithstanding the FCRA's requirements, Defendants deprived

5   Plaintiff of this valuable information according to their standard practice and

6   procedure.

7   53.   After receiving the copy of the inaccurate report, Plaintiff contacted

8   Defendants on or about December 13, 2021 to dispute the accuracy of the report,

9   specifically identifying each inaccurate record.

10   54.   Defendants conceded that some of the disputed information was

11   inaccurate, and removed it from his report, but kept other information on.

12   55.   For example, Defendants did not remove the "home health" provider

13   with the high risk indicator from the report until after further efforts by Plaintiff.

14   56.   After Defendants finally removed all of the inaccurate records from

15   their report, Plaintiff was able to move forward with his application through

16   Sproutt.

17   57.   Because Defendants did not identify the sources from which they

18   obtained the inaccurate prescription records at issue, Plaintiff was unable to

19   contact those sources to determine the source of the inaccuracy of prevent further

20   misreporting, and remains unable to do the same presently.

21   58.   Defendants' preparation of the December 7, 2021 report delivered to

22   Sproutt and their response to Plaintiff's December 10, 2021 request for

23   information were each consistent with Defendants' intentionally-adopted policies

24

**COMPLAINT - 10**

1  and procedures, and were not the result of error or mistake.

2        59.    At all times pertinent hereto, Defendants' conduct was a result of
3  their deliberate policies and practices, was willful, and carried out in reckless
4  disregard for a consumer's rights as set forth under § 1681e(b) and § 1681g(a)(2)
5  of the FCRA, and further assumed an unjustifiable high risk of harm.

6        60.    As of result of Defendants' conduct, Plaintiff has suffered damages in
7  the form of (a) loss of insurance opportunity, (b) harm to reputation, (c) time spent
8  to resolve the problem, (d) emotional distress, and (f) denial of statutorily-
9  mandated information necessary to prevent future misreporting.

10       61.    At all times pertinent hereto, Defendants were acting by and through
11  their agents, servants and or employees who were acting within the course and
12  scope of their agency or employment, and under the direct supervision and control
13  of Defendants.

## V.    CLASS ACTION ALLEGATIONS

15       62.    Plaintiff brings this action pursuant to the Federal Rules of Civil
16  Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

> **1681e(b) Inaccuracy Class:** All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the date of class certification, about whom Defendants sold a report to a third party containing one or more items of information which did not pertain to the individual who was the subject of the report.

> **1681g(a)(2) Class:** All persons residing in the United States (including all Territories and other political

subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the date of class certification to whom, following a request from the consumer, Defendant sent a report, document or electronic communication which contained information that it had reported to an insurance company, but did not identify the third party source(s) from which Defendants obtained the information on the report.

63.     Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

64.     **Numerosity. Fed. R. Civ. P. 23(a)(1)**. The Class members within each Class are so numerous that joinder of all is impractical. Upon information and belief Defendants procure and sell hundreds if not thousands of consumer reports each year, and those persons' names and addresses are identifiable through documents maintained by Defendants.

65.     **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Classes and predominate over the questions affecting only individual members. The principal questions concern whether Defendants violated the FCRA by failing to follow reasonable procedures to assure the accuracy of information on its report, and/or by misrepresenting the source(s) from which they obtain prescription information.

66.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages as Class members, arising out of Defendants' common course of conduct.

**COMPLAINT - 12**

67.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes. His interests are aligned with and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

68.     **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expenses to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

1

2

3

## VI.    CAUSES OF ACTION
### COUNT I
### 15 U.S.C. § 1681e(b)
*Plaintiff Individually and on behalf of the 1681e(b) Inaccuracy Class*

4

5

69.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

6

7

70.    Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

8

9

71.    The report Defendants sold to Sproutt is a "consumer report" within the meaning of 15 U.S.C. § 1681a(d).

10

11

12

13

72.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendants are liable for failing to follow reasonable procedures to assure the maximum possible accuracy of the information they sold about Plaintiff and members of the Class, in violation of 15 U.S.C. § 1681e(b).

### COUNT II
### 15 U.S.C. § 1681g(a)(2)
*Plaintiff Individually and on behalf of the 1681g(a)(2) Class*

14

15

16

73.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

17

18

19

20

74.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendants are liable for failing to accurately and clearly disclose the sources from which they obtained the information in consumer file disclosures, in violation of 15 U.S.C. § 1681g(a)(2).

### COUNT III
### Defamation
*Plaintiff Individually*

21

22

23

75.    Plaintiff incorporates the foregoing paragraphs as though the same

24

**COMPLAINT - 14**

1    were set forth at length herein.

2         76.    Defendants made false statements about Plaintiff to prospective

3    insurers that mis-portrayed Plaintiff's physical health and which depicted him as

4    sickly, when in fact he was in excellent health. This caused the insurers to which

5    Plaintiff applied to view him as a health risk when he was not, rendering him

6    ineligible for insurance coverage and/or causing him to be quoted higher rates.

7         77.    Defendants communicated these false statements to one or more

8    prospective insurers.

9         78.    Defendants made these false statements about Plaintiff and

10   communicated them to third parties with malice or willful intent to injure.

11        79.    As a result of Defendants' actions, Plaintiff suffered damages

12   including harm to his reputation, denial of life insurance, time spent addressing

13   the problem, and emotional distress.

14                        **VII.   PRAYER FOR RELIEF**

15        WHEREFORE, Plaintiff and the Classes pray for relief as follows:

16        A.    An order certifying the case as a class action on behalf of the

17   proposed Classes under Federal Rule of Civil Procedure 23 and appointing

18   Plaintiff and the undersigned counsel of record to represent same;

19        B.    An award of actual, statutory, and punitive damages for Plaintiff and

20   the Classes;

21        C.    An award of pre-judgment and post-judgment interest as provided by

22   law;

23        D.    An award of attorney's fees and costs; and

24

1   E.      Such other relief as the Court deems just and proper.

2                    **VIII.  TRIAL BY JURY**

3        Plaintiff hereby requests a trial by jury on those causes of action

4   where a trial by jury is allowed by law.

5        RESPECTFULLY SUBMITTED AND DATED this 25th day of

6   October, 2022.

7                              TERRELL MARSHALL LAW
                              GROUP PLLC

8
                              By: /s/ Beth E. Terrell, CSB #178181
9                                 Beth E. Terrell, CSB #178181
                                  Email: bterrell@terrellmarshall.com
10                                Jennifer Rust Murray*
                                  Email: jmurray@terrellmarshall.com
11                                Adrienne D. McEntee*
                                  Email: amcentee@terrellmarshall.com
12                                936 North 34th Street, Suite 300
                                  Seattle, Washington 98103-8869
13                                Telephone: (206) 816-6603
                                  Facsimile: (206) 319-5450
14

15                            MILLER SHAH LLP

16
                              By: /s/ Kolin Tang, CSB #279834
17                                Kolin Tang, CSB #279834
                                  Email: ktang@millershah.com
18
                              By: /s/ James C. Shah, CSB #260435
19                                James C. Shah, CSB #260435
                                  Email: jshah@millershah.com
20                                19712 MacArthur Blvd., Suite 222
                                  Irvine, California 92612
21                                Telephone: (866) 540-5505
                                  Facsimile: (866) 300-7367
22

23

24
                         **COMPLAINT - 16**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

James A. Francis*
Email: jfrancis@consumerlawfirm.com
John Soumilas*
Email: jsoumilas@consumerlawfirm.com
Lauren Kw Brennan*
Email: lbrennan@consumerlawfirm.com
FRANCIS MAILMAN
    SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Telephone: (215) 735-8600
Facsimile: (215) 940-8000

*Attorneys for Plaintiff and the Class*

*\*Pro Hac Vice forthcoming*

**COMPLAINT - 17**